UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY AT TRENTON

RECEIVED
DEC 05 2016
AT 8:30_____M
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| JEFFREY A. WINTERS and COLLECTION SOLUTIONS, INC., a New Jersey Corporation; on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH K. JONES, ESQ.; BENJAMIN J. WOLF, ESQ.; JONES, WOLF & KAPASI, LLC; LAURA S. MANN, ESQ., LAW OFFICES OF LAURA S. MANN, LLC; ARI H. MARCUS, ESQ.; YITZCHAK ZELMAN, ESQ.; and MARCUS & ZELMAN, LLC;<br><br>Defendants. | Case No.<br><br>Civil Action<br><br>CLASS ACTION COMPLAINT<br>Federal and New Jersey RICO and Fraud<br><br>DEMAND FOR TRIAL BY JURY |

Plaintiffs Jeffrey A. Winters (Winters) and Collection Solutions, Inc., a New Jersey Corporation (CSI), on their own behalf and on behalf of all others similarly situated, by way of Class Action Complaint, say:

PARTIES

1. Winters is the sole shareholder of CSI, a New Jersey Corporation with offices at 540 Hudson Street, Hackensack, Bergen County, New Jersey primarily engaged in debt collection services. At all relevant times, CSI also operated under the trade name of United Credit Specialists (UCS). Charles I. Turner, Esq. (Turner) is an Attorney at Law of New Jersey who at all relevant times served as in-house Counsel to CSI and UCS. Winters, CSI, UCS, and Turner are victims of the actionable conduct which Defendant attorneys are alleged to have perpetrated. Winters and CSI serve herein

1

as Plaintiffs and Class Action Representatives. The particular actionable conduct perpetrated by Defendants against Plaintiffs was the prosecution by Defendants of litigation captioned as <u>Juliette Chapa, et al v Charles I. Turner, Esq., et al</u>, (Chapa Case) Federal District Court of New Jersey, Case No. 2:15-cv-03125 (JMV-MF). Winters, CSI, and UCS, on their behalf and on behalf of Turner, settled the Chapa Case without filing a counterclaim and before completion of discovery on or about September 21, 2016, with prejudice and without costs, for the nominal amount of $12,000.- payable in 12 monthly installments; all in order to mitigate the damage already done to Turner, whose recent stroke gravely hampered his ability to represent himself in the litigation.

2. Defendants Joseph K. Jones, Esq. (Jones), and Benjamin J. Wolf, Esq. (Wolf) are attorneys licensed to practice in New Jersey, New York, and Connecticut, who practice as principal Members of Jones, Wolf & Kapasi, LLC (JWKLLC), with offices at 375 Passaic Ave., Suite 100, Fairfield, New Jersey 07004 and 555 Fifth Ave., Suite 1700, New York, New York 10017.

3. Defendant Laura S. Mann, Esq. (Mann) is an attorney licensed in New Jersey and the principal of the Law Offices of Laura S. Mann, LLC (MannLLC), with offices at 85 Newark-Pompton Turnpike, Riverdale, New Jersey 07457.

4. Defendants Ari H. Marcus, Esq. (Marcus) and Yitzchak Zelman, Esq. (Zelman) are attorneys licensed to practice in New Jersey and New York and are the principals in Marcus & Zelman, LLC (MZLLC) with offices at 1500 Allaire Ave., Suite 101, Ocean Township, New Jersey 07712. All Defendants herein, individually and as law firm entities; are collectively referred to as "Defendant(s)" or "Defendant attorneys".

## JURISDICTION

5.  The United States District Court for the District of New Jersey has Federal subject matter jurisdiction pursuant to 28 USCA §1331 and the invocation by CSI of 18 USCA §1961, et seq., the Federal RICO Statute; and has supplemental jurisdiction regarding the New Jersey RICO Statute, NJSA 2C:41-1, et seq., as well as regarding allegations of fraud and other torts pleaded herein.

## OVERVIEW

6.  Starting in 2013 and accelerating since, Defendants have schemed to operate a business Plan (RICO Plan) in violation of 18 USCA §1961, et seq., the Federal RICO Statute (RICO), and the similar New Jersey RICO Statute, NJSA 2C:41-1, et seq. (NJ RICO). The RICO Plan is also fraudulent and, as set forth below, tortious.

7.  A relatively early warning of the RICO Plan's existence and operation was published in the form of a precedential decision dated April 27, 2015 in the Southern District of New York, Gallego v Northland Group, Inc., 102 F.Supp.3d 506, (SDNY 2015); wherein Judge Hellerstein *sua sponte* rejected the proposed consensual class action settlement, proffered even before Northland filed an answer or responsive pleading, and opined that:

". . . the class members would receive 16.5 cents each, . . . Plaintiff's counsel (would) recover fees up to $35,000. . . . (and that) certifying a class would do little more than turn NGI's settlement with Mr. Gallego into a general release of liability from all similarly situated plaintiffs at minimal extra cost while furthering a cottage industry among enterprising lawyers, class certification is denied." Gallego, supra at 509 and 511.

"Cottage industry" is a euphemism for the RICO Enterprise and Plan alleged herein. Attached as Exhibit A is the District Court decision in Gallego, the Second Circuit

unreported affirmance and remand, and the Pacer generated Docket Sheet confirming the final dismissal.

8. Some features of the implementation of the RICO Plan, evidencing its use to violate the Federal and New Jersey RICO Statutes, as well as commit torts and fraud; are:

A. Avoiding Small Claims Courts or unprofitable immediate payment of nominal claims without attorney's fees, by filing spurious putative class actions in Federal Court en masse on the theory that the vast majority of the relatively deep-pocket defendants would view a quick settlement for under $100,000 as basically a nuisance claim; with the rare contested case only confirming to Defendants the practical advisability of settling early on a class basis. Attached as Exhibit B(a), (b), (c) are individual Pacer filing records in the N.J. District Court for the Defendant Attorneys Jones, Mann, and Marcus. Plaintiffs have found no Federal class actions filed by Defendants where a class has been certified other than as part of or as related to a settlement. Notable is the inordinate proportion of cases opened, settled and closed within several months.

B. Defendants search out, solicit, and develop professional Plaintiffs retained to pose as theoretical "least sophisticated consumers"; falsely imputing imaginary consequences and the requisite actual damages to those Plaintiffs when any actual damages are likely prevented by consultation with referring attorneys or Defendants. Attached as Exhibit C is a Pacer filing for a professional Plaintiff who appears as the sole class action representative in six matters for either JWK or MZ.

C. Knowingly ignoring the almost universal absence of actual damages and lack of typicality, while falsely alleging the existence of certifiable plaintiff classes; all the while necessarily knowing that the alleged classes had little or no chance of being

4

certified if there was any critical examination by the Court or adversary counsel of the propriety of certification. During a lecture by Mann and Jones to attorneys at a Federal Fair Debt Collection Practices Act seminar on October 8, 2013; Mann first admits that actual damages "rarely" occur, and Jones then acknowledges that "you've got to prove actual damages." See Page 104 at Lines 7-12 of a Transcript of the October 8, 2013 seminar attached with the cover page as Exhibit D. Mann and Jones thereby acknowledge possessing the *mens rea* necessary to find that their filing a class action when actual damages are absent is a criminal predicate act, only two of which are necessary to qualify the Enterprise as violating the Federal and New Jersey RICO Statutes.

    D.    Settling the spurious class actions while solely considering the class action attorneys fees; without any consideration or concern for the quality or amount of the settlement's benefits provided to the alleged class. The situation in Gallego, supra, is apparently typical.

    E.    Filing separate lawsuits on behalf of a single alleged class representative against each of several defendant victims, instead of filing a single lawsuit against the several defendant victims. See Exhibit Page 1 of Exhibit B(a) hereinabove where Jones files three class actions within 90 days on behalf of the same Plaintiff (Caprio) and against the same Defendant (Apex Asset Management); and Exhibit C hereinabove where the same sole putative class representative was used by different law offices in 6 class actions filed within about 20 months.

    F.    Filing separate lawsuits on behalf of several alleged class representatives against a single defendant victim, instead of filing a single lawsuit including the several

5

alleged class representatives against that single defendant victim and/or seeking some form of lasting relief from that single defendant; of which Caprio and Apex Asset Management, supra at Paragraph 8E, is an example. Paragraphs 8E and 8F clearly evidence the unprofessional, improper, and RICO Plan-implementing practice of multiplying lawsuits to secure increased attorney's fees as opposed to reducing the number of lawsuits filed to increase individual client benefits and over-all efficiency.

9. In the implementation of their RICO Plan, Defendants also engage in tortious conduct as alleged below and violate New Jersey Rule of Court 1:4-8, Frivolous Litigation; Rule of Professional Conduct (RPC) 3.1, Meritorious Claims; and RPC 3.3, Candor Toward the Tribunal.

## FIRST COUNT
## FEDERAL AND NEW JERSEY RICO

10. Paragraphs 1 through 9 are repeated.

### The RICO Enterprise

11. Since about early 2013, Jones, Wolf, JWKLLC, Mann, MannLLC, Marcus, Zelman, and MZLLC, in cooperation with other independent attorneys and individuals serving in various capacities; have conspired to, and have been operating a classic, Mafia style, racketeering "Enterprise" in violation of the Federal and New Jersey RICO Statutes. We note parenthetically that the core of what later became the "Enterprise" was apparently, from Pacer records at Exhibt B(a), started by Jones prior to 2013. The basic operation of the RICO Enterprise was and is to implement a RICO Plan to select as victims persons or entities providing services related to consumers, ascribe to the victims one or more statutary violation of consumer protection laws or regulations, and then file a class action lawsuit based on a totally imaginary class seeking relatively

6

enormous minimum statutory damages and attorney's fees; all the while ignoring the practical impossibility of class certification and usual total lack of actual damages constitutionally necessary for any recovery; whether or not a statutory violation of a form collection letter or contract could be specified. The economic goal of the RICO Enterprise is to start and quickly settle multiple class actions, typically apparently securing a mid-five figure settlement within months of filing the action. The <u>Gallego</u> matter, supra, would have been a prime example if the Court had simply approved the proposed settlement in the normal course; as appears to be the standard practice. But for the Court's *sua sponte* analysis of the proposed settlement; Jeffrey Gallego would have produced an additional round of attorney's fees, as he did in the other duplicative suits filed on his behalf against cookie-cutter defendants.

12. Defendants' course of conduct in furtherance of their RICO Enterprise implemented its RICO Plan by improperly filing a multiplicity of lawsuits; consistently violating the basic principles of the Entire Controversy Doctrine as well as New Jersey Rule of Court 1:4-8, Frivolous Litigation; Rule of Professional Conduct (RPC) 3.1, Meritorious Claims; and RPC 3.3, Candor Toward the Tribunal.

13. Even if, arguendo, in any RICO Plan lawsuit there are sufficient technical or actual damages necessary to sustain a class representative's claim; the nature and value of any damage(s) suffered by the the vast majority of class members, and the variable nature of that damage, would preclude the commonality, typicality, and desirability necessary for any class certification. These class disqualifying characteristics make the class allegations a litigation ploy to obtain attorney's fees and precisely the "cottage industry" described by Judge Hellerstein in <u>Gallego</u>, supra; rather than a proper attempt

to posit and represent a putative class. Initial pre-litigation discovery has revealed no class certifications other than those associated with a settlement as was refused *sua sponte* in Gallego, supra; with no significant notice, class payment distribution, or Multi-District proceedings appearing. This lack of class validation is apparent from an examination of the Federal Pacer database; despite the commencement by Defendants of at least several hundred Federal Class Actions and an as yet unknown number of State court actions since 2013. See Exhibits attached hereto.

14. Defendant attorneys, together with others including cooperating attorneys, experts, office personnel, clients and others; acted and were associated-in-fact, though all may not necessarily or actually be culpable as Participants in the RICO Enterprise. Of the Defendant attorney Participants, at least Mann and Jones were criminally culpable due to their exhibited intent, admitted knowledge, and leadership role in the furthereance of the RICO Enerprise and implementation of its Plan.

### The Racketeering Plan and Pattern

15. The purpose of the RICO Enterprise is to promote, enable and facilitate the filing of spurious class actions to collect class action attorney's fees. The Plan and Pattern consist of: a) locating, collecting, and using collection letters and communications (and any other comparable documents) subject to the Federal Fair Debt Collection Practices Act (and/or other comparable State statutes) and soliciting the cooperation of their recipients; b) constructing unsubstantiated and theoretical damage scenarios alleging illusory class-wide statutory damages, usually invalid in any case due to the lack of any actual damages; c) filing class action lawsuits against the issuers of the collection letters or communications without any legitimate prospect of seeking or obtaining class

certification; and d) settling the class action lawsuit(s) for mid-five or low-six figure attorneys fees based on the supposition that the defendant victims would pay that amount rather than pay even more in fees to their attorneys to litigate, albeit successfully. The RICO Enterprise's successful operational Plan and Pattern are tranparent and documented as set forth in the Exhibits attached hereto. The Plan's success has been driven by its structure by which the Defendant attorneys settle early in the litigation for as much as they can get and less than it would cost the Class Action Defendant victims to defend through initial motions and certainly through certification proceedings and trial. There are no apparent instances where class benefits were widely distributed or even where class certification was granted (other than via consensual settlement including provision for attorney's fees as proposed in Gallego, supra) and the class properly documented. The Chapa Case, supra, at Paragraph 1 is one of the several hundred spurious class actions commenced by Defendant attorneys in pursuit of their RICO Enterprise.

### Relatedness, Continuity and the On-going Enterprise

16. The Participants' acts implementing the Plan have at all times since the inception of the RICO Enterprise in about 2013 been both related and continuous as evidenced by the Exhibits attached hereto.

### Predicate Criminal Acts and Negligent Participation

17. The Federal and New Jersey RICO Statutes require the commission of at least two criminal predicate acts by the RICO Enterprise Participants in pursuit of the Plan and as part of its Pattern. The Statutes do not require that all RICO Enterprise Participants commit a crime or crimes as part of the Pattern in pursuit of the Plan.

18. Thus, while the criminal actions of the Defendant attorney Participants, or

9

other criminal acts by other RICO Enterprise Participants, may be required to qualify the Enterprise as a RICO violating effort; all the acts in pusuit of the Plan need not be intrinsically criminal, and all Participants need not have committed crimes. The office staff employed by Defendant attorneys to process the class action forms may qualify as Participants in the RICO Enterprise without their participatory acts being considered intrinsically criminal. Similarly, the law firm's accountants and auditors may be shown to have been Participants in the RICO Enterprise; without proof of intrinsic criminality on their part being necessary. Culpable negligence is sufficient to support liability or findings of professional malpractice. Furtherance of the Enterprise and Plan by some Participants may be unknowing and innocent; with no personal liability attaching.

     19.    The RICO Enterprise's Plan and Pattern of activity involves the following criminal predicate acts which qualify it as violative of the Federal and New Jersey RICO Statutes, 18 USC §1962 and NJSA 2C:41-2(c) and (d); i.e.

    A) 18 USC §1341, Mail Fraud;

    B) 18 USC §1343, Wire Fraud;

    C) 18 USC §1503, Obstruction of Justice;

    D) 18 USC §1511, Obstruction of State law enforcement;

    E) 18 USC §1512, Witness tampering;

    F) 18 USC §1546, Fraud and misuse of documents;

    G) 19 USC §1551, Extortion and other Federal Statutes;

    H) Theft by Extortion, NJSA 2C:20-5. In this case Defendant attorneys purposely and unlawfully seek to extort statutory and class action attorney's fees by filing bogus and sham class actions subjecting the victims to impairment of their credit or business

reputation or imposing costs of litigation exceeding the extortion amount.

I) Theft by Deception, NJSA 2C:20-4. In this case Defendant attorneys purposely and unlawfully represent to the Court and Counsel that they are pursuing putative class actions in good faith when in fact the basic and sole motivation was prospective class action attorney's fees.

J) NJSA 2C:21-7 (b) and (e) - Deceptive Business Practices.

Defendant attorneys consistently violated NJSA 2C:21-7:

(b) by conspiring and cooperating with others to implement the NJ RICO Enterprise Plan and Pattern by making misrepresentations to the Courts, Attorneys, and others involved in the administration of the putative class actions regarding their viability; and

(e) by conspiring and cooperating to implement the NJ RICO Enterprise Plan and Pattern by advertising and misrepresenting to the Courts, Attorneys, and others involved in the administration of the putative class actions that the class actions met acceptable standards for their commencement; when they did not.

**Defendant attorney Violations of the Federal and New Jersey RICO Statutes**

20. Jones, Wolf, JWKLLC, Mann, MannLLC, Marcus, Zelman, and MZLLC have, amongst themselves and with the knowing or unknowing cooperation of others, violated and continue to violate 18 USC §1962 and NJSA 2C:41-2(c), the Federal and New Jersey RICO Statutes, by managing as Participants a RICO Enterprise which implemented and continues to implement a Plan and Pattern of racketeering activities.

21. Defendant attorneys have conspired, amongst themselves and with the knowing or unknowing cooperation of others, to violate and continue to violate 18 USC

11

§1962 and NJSA 2C:41-2(d) by managing a racketeering RICO Enterprise which continues to implement a Plan and Pattern of racketeering activities.

22. Defendant Attorneys' implementation of the RICO Enterprise as described and alleged herein constitutes legal malpractice; violates the New Jersey and Federal RICO Statutes; violates RPC 3.1, and RPC 3.3; and has damaged the Plaintiff class economically, personally, physically, and psychologically.

## SECOND COUNT
## FRAUD

23. Paragraphs 1 through 22 are repeated.

24. The pleadings filed by Defendant attorneys related to the litigation referred to hereinabove, included representations of fact regarding those pleadings.

25. Certain of said representations of fact, such as the basic representation that said pleadings were filed in good faith and pursuant to the applicable Rules of Professional Conduct; were knowingly false. General knowingly false representations necessarily included:

A) That each named class action Plaintiff suffered actual damages and represented a universe of class members who had suffered comparable and typical actual damages; when in fact the named class action Plaintiff representative, typically, did not and could not have suffered any actual damage simply because of having consulted a Defendant attorney early enough in the process to have avoided any possibility of suffering actual damage.

B) That each named class action Plaintiff represented a universe of class members who had suffered from a comparable and typical statutory violation based on

"the least sophisticated consumer" model; when in fact it was the Defendant attorneys who imagined and constructed the alleged statutory violation.

C) That each named class action Plaintiff represented a universe of class members who had suffered from a comparable and typical statutory violation based on "the least sophisticated consumer" model; when in fact the alleged statutory violation, often and typically, involved nothing more than a clerical error mistakenly addressing an envelope and triggering a single possible violation and maximum $1,000 fine.

D) That the class action format was a legitimate attempt to obtain a reasonable remedy for the class members; when in fact, as in Gallego, supra, there was no possibility of any reasonable remedy. In Gallego, in connection with the Court's *sua sponte* rejection of class certification; the Court posited the proposed class action member remedy as totalling $.165 (16.5 cents). See Exhibit A.

26. Defendant attorneys' knowingly false representations were made with the intention and knoweldge that the Courts and litigation victims would rely on them; resulting in significant burdens on the Courts and financial penalties to the victims; together with economic, personal, physical, and psychological damages.

### THIRD COUNT
### NEGLIGENCE

27. Paragraphs 1 through 26 are repeated.

28. Defendant attorneys participation in the implemention of the RICO Plan constituted negligence which damaged the class of Plaintiff victims economically, personally, physically, and psychologically.

### FOURTH COUNT
### LEGAL MALPRACTICE

29.     Paragraphs 1 through 28 are repeated.

30.     Defendant attorneys participation in the implementation of the RICO Plan constituted legal malpractice which damaged the class of Plaintiff victims economically, personally, physically, and psychologically.

## CLASS ALLEGATIONS

31.     The Plaintiff Class is defined as:

Defendants (Victims) in Class Actions filed on and after January 1, 2013 in the Federal and State Courts of New Jersey and New York by the Defendant Attorneys alleging various statutory violations of the Federal Fair Debt Collections Practices Act and other State and Federal consumer protection statutes; which putative Class Actions were closed and/or settled and closed without filed evidence of actual damages or actual judicial consideration of class validity.

32.     New Jersey Rule of Civil Procedure 4:32-1(a) sets forth four prerequisites to the maintenance of a class action, which are comparable and equivalent to those required by the Federal Rules, and which in this case are:

**(1) The class is so numerous that joinder of all members is impractical.**

It is impracticable to join all the Victims because their number makes their joinder impractical. There are at least several hundred Victims designated in the lists of Federal cases brought by the Defendant attorneys pursuant to their Enterprise and Plan; all without including more difficult to index cases brought in the State courts of New Jersey, and probably New York and Connecticut.

**(2) Questions of law or fact are common to the class.**

The common core allegations, and the common basic questions of law and fact, which are the common concerns of all the members of the class, relate to whether the Victims defined herein were victimized as alleged. The Defendant attorneys may have started some matters excluding one or more RICO Plan elements, thereby taking those

14

matters out of the RICO Plan; which would exclude the defendants in those undiscovered matters from the class of Victims, with hundreds remaining.

**(3) The claims of the named Plaintiffs are typical of the claims of the class they seek to represent.**

Winters and CSI, the Victims serving as Class Representatives are typical of the other Victims in all the ways which make them all Defendants and Victims in the spurious Class Actions started against them in accordance with the RICO Plan described herein.

**(4) Winters and CSI will fairly and adequately represent the interests of the class.**

Winters and CSI have diligently prosecuted the interests of the class they represent to date and have no interests adverse to the interests of other members of the class. The interests of the class members coincide and do not conflict.

Winters and CSI's attorneys are competent and will adequately represent the interests of the class. They are experienced in complex litigation and the successful representation of large classes in significant class actions. Winters and CSI's lead attorney, David M. Hoffman, Esq., to be complemented as appropriate, has over 50 years experience at the Bar and recently served as sole Lead co-Counsel in the Multi District Class Action against the Unum Group which resulted in about 800 Million Dollars, including fines and costs, being paid to over 10,000 members of the Plaintiff class. See In re: UnumProvident Corp. ERISA Benefits Denial Actions, United States District Court for the Eastern District of Tennessee at Chattanooga, Case No. 1:03-md-1552 (CLC).

33. In addition to satisfying the Rule 4:32-1(a) prerequisites, Rule 4:32-1(b)

requires the satisfaction of sub-section (1), (2), or (3). While sub-sections (b)(1) and (b)(3) would also likely be satisfied; Winters and CSI clearly satisfy sub-section (b)(2).

## Rule 4:32(b)(2)

Certification pursuant to Rule 4:32(b)(2) is appropriate because the claims against Winters, CSI and the other Victims have similar characteristics, were made under analogous circumstances, and violate the Federal and New Jersey RICO Acts in basically the same way. The relief sought on behalf of all members of the class will be similar and will provide appropriate relief for all members of the class.

## Proximate Cause and Damages

34. The Defendant Attorney's acts complained of herein have directly damaged Winters, CSI and all others similarly situated by damaging their business and reputation, extorting, stealing, and conspiring to extort and steal their funds, and by causing severe emotional and physical stress and damage.

WHEREFORE, Winters, CSI and all others similarly situated demand relief as follows:

1. Money Damages assessed jointly and severally against the Defendant attorneys;

2. Pre-Judgment Interest from the initial filing date of the within action;

3. Statutory Treble Damages;

4. Ancillary relief as may be deemed appropriate pursuant to 18 USC §1961, et sq. and NJSA 2C:41-4(a);

5. Attorney's fees and costs, including the costs of investigation and litigation; and

6. Such other and further relief as may be deemed equitable and just.

## DEMAND FOR TRIAL BY JURY

Winters and CSI, on their own behalf and on behalf of all others similarly situated, demand trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL ATTORNEY

David M. Hoffman, Esq., is hereby designated as Trial Attorney.

## CERTIFICATION AS TO RELATED PENDING MATTERS

The undersigned hereby certifies on behalf of Winters and CSI that to the best of his knowledge, information and belief, there are no other pending actions or class actions related to the pending matter in any court, and there are no related pending arbitration or administrative proceedings; except that in addition to Napolitano v Regan & Ragan, P.C., DNJ 3:15-cv-2732 (FLW-TJB), and Lin, etc. et al v AGM Windows, etc. et al, Superior Court of New Jersey, Law Division, Morris County, Docket No. L-659-16, which presently have pending motions to dismiss o the pleadings; there are likely to be other matters similar to the matters referred to herein listed in the Pacer data base or the not easily available State Court data bases of New Jersey, New York, and Connecticut. The undersigned further certifies that he knows of no other parties which should be joined except as discovery may disclose. The undersigned acknowledges his continuing obligation to amend this certification if there is a change in the facts set forth herein.

Dated: December 5, 2016

LAW OFFICE OF DAVID M. HOFFMAN
David M. Hoffman, Esq. (DH1611)
28 Countryside Drive
Basking Ridge, N.J. 07920
(908) 608-0333
dhoffman@david-hoffman-esq.com

By  s/David M. Hoffman
   David M. Hoffman
   Attorneys for Plaintiffs