## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Not for Publication**

JEFFREY A. WINTERS, et al,

       *Plaintiffs*,

    v.

JOSEPH K. JONES, et al,

       *Defendants*.

Civil Action No. 16-9020

**OPINION**

**John Michael Vazquez, U.S.D.J.**

      This class action comes before the Court on three motions to dismiss Plaintiffs' Amended Complaint. The three groups of Defendants who have filed the motions are (1) Defendants Joseph Jones, Benjamin Wolf, and Jones, Wolf & Kapasi LLC, D.E. 39; (2) Defendants Laura Mann and the Law Offices of Laura S. Mann, D.E. 49; and (3) Defendants Ari Marcus, Yitzchak Zelman, and Marcus & Zelman LLC, D.E. 50. Plaintiffs Jeffrey Winters and Collection Solutions, Inc. ("Plaintiffs") filed a single brief in opposition, D.E. 56, to which all Defendants replied, D.E. 58, 59, 60.[1] The Court reviewed all the submissions in support and in opposition,

---

[1] In this Opinion Joseph Jones, Benjamin Wolf, and Jones, Wolf & Kapasi LLC's motion to dismiss (D.E. 39) will be referred to as "Jones MTD." Defendants Laura Mann and the Law Offices of Laura S. Mann's motion to dismiss (D.E. 49) will be referred to as "Mann MTD." Defendants Ari Marcus, Yitzchak Zelman and Marcus & Zelman LLC's motion to dismiss (D.E. 50) will be referred to as "Marcus MTD." Plaintiffs' brief in opposition (D.E. 56) will be referred to as "Pl. Opp." Joseph Jones, Benjamin Wolf, and Jones, Wolf & Kapasi LLC's reply brief (D.E. 57) will be referred to as "Jones Rep." Defendants Laura Mann and the Law Offices

and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motions to dismiss are **GRANTED**. The Amended Complaint suffers from defective legal theories, both substantively and as pled. Moreover, Plaintiffs' factual allegations are severely lacking in light of the federal pleading requirements.

## I.  BACKGROUND

### A. Factual Background

Plaintiff Collection Solutions, Inc. is a New Jersey corporation that primarily provides debt collection services. First Amended Complaint ("FAC") ¶ 1. Plaintiff Jeffrey Winters is the sole shareholder of Collection Solutions, Inc. *Id.* Defendants Joseph Jones and Benjamin Wolf are attorneys who practice at the firm of Jones, Wolf & Kapasi, LLC. *Id.* ¶ 2. Defendant Laura Mann is an attorney and the principal at the firm of Laura S. Mann, LLC. *Id.* ¶ 3. Defendants Ari Marcus and Yitzchak Zelman are attorneys and the principals of the firm of Marcus & Zelman, LLC. *Id.* ¶ 4.

Plaintiffs claim that "the particular actionable conduct perpetrated by Defendants against Plaintiffs . . . was the class action litigation . . . *Juliette Chapa, et al[.] v[.] Charles I. Turner Esq., and United Credit Specialists et al.,*[2] in the Federal District Court of New Jersey, Case No.

---

of Laura S. Mann's reply brief (D.E. 58) will be referred to as "Mann Rep." Defendants Ari Marcus, Yitzchak Zelman and Marcus & Zelman LLC's reply brief (D.E. 59) will be referred to as "Marcus Rep."

[2] Plaintiff Collection Services, Inc. is operated under the trade name of United Credit Specialists. Charles Turner is in-house counsel for both Collection Solutions, Inc. and United Credit Specialists. FAC ¶ 1.

2:15-cv-03125." ("Chapa Case") *Id.* ¶ 1.[3] Plaintiffs settled the Chapa Case for $12,000 in

September 2016. *Id.* Plaintiffs allege that the Chapa Case is illustrative of Defendants'

enterprise pursuant to The Racketeer Influenced and Corrupt Organizations Act ("RICO") of

joining together to bring sham class action lawsuits against debt collection agencies. *Id.* ¶ 9.

Specifically, Plaintiffs allege that at some point prior to 2013, Defendants formed a RICO

enterprise that:

> avoided Small Claims Courts or unprofitable immediate payment
> of nominal claims without attorney's fees, by filing sham putative
> class actions in Federal court *en masse* on theory that the vast
> majority of the relatively deep-pocket defendants (mostly debt
> collection companies) would view a quick settlement for under
> $100,000 as basically a nuisance claim; with the rare contested
> case only confirming to victim defendants the practical advisability
> of settling early on a class basis.

FAC ¶ 8(A).

To perpetuate the alleged sham class actions, Defendants "search out, solicit, and develop

professional [p]laintiffs retained to pose as theoretical 'least sophisticated consumers.'" *Id.* ¶

8(B). Defendants then, according to Plaintiffs, falsely impute "imaginary" false damages to

those professional plaintiffs. *Id.* To support these allegations, Plaintiffs point to five cases filed

on behalf of the same plaintiff (Marni Truglio), where Ari Marcus on behalf of Marcus &

Zelman LLC was co-counsel. Three of those cases were allegedly opened and then settled

within months of each other. *Id.* ¶ 26(D).

---

[3] While Plaintiffs word their FAC to suggest that Defendants collectively were involved in the
Chapa Case, neither Defendants Mann and the Law Office of Laura S. Mann or Defendants
Marcus, Zelman, and Marcus & Zelman LLC represented any party in that lawsuit. Mann MTD
at 1; Marcus MTD at 4-5.

Plaintiffs further allege that Defendants knowingly bring the sham class actions in full awareness that actual damages and typicality do not exist. Plaintiffs support this allegation by pointing to a lecture at a Federal Fair Debt Collection Practices Act ("FDCPA") seminar on October 8, 2013, where both Mann and Jones spoke. FAC ¶ 8(C). At the seminar, according to Plaintiffs, Mann admitted that actual damages rarely occur and Jones stated that "you've got to prove actual damages." *Id.* Thus, Plaintiffs assert that Defendants know that courts would not certify these preliminary classes of plaintiffs if the litigation reached the certification stage. *Id.* Plaintiffs continue that Defendants are unconcerned over class deficiencies because Defendants file these lawsuits only for the attorney's fees. *Id.* ¶ 8(D). To that end, Defendants allegedly maximize the number of cases they bring by not consolidating litigation efforts. *Id.* ¶¶ 8(E)-(F).[4]

Other relevant allegations from the FAC are discussed further below.

## B. Procedural History

On December 5, 2016, Plaintiffs filed their initial Complaint. D.E. 1. Marcus, Zelman, and Marcus & Zelman LLC filed a motion to dismiss. D.E. 19. Mann and the Law Offices of Laura S. Mann also filed a motion to dismiss. D.E. 21. Plaintiffs, in response, filed the FAC on February 6, 2017. D.E. 29. In their FAC, Plaintiffs allege seven counts: a federal RICO violation (Count I); a federal RICO conspiracy (Count II); a New Jersey RICO violation (Count III); a New Jersey RICO conspiracy (Count IV); fraud (Count V); negligence (Count VI); and legal malpractice (Count VII). In alleging a federal RICO violation, Plaintiffs claim that

---

[4] Specifically, Plaintiffs claim that "Defendants filed separate lawsuits on behalf of a single alleged class representative against each of several defendant victims, instead of filing a single lawsuit against the several defendant victims." Plaintiffs add "Defendants filed separate lawsuits on behalf of several alleged class representatives against a single defendant victim, instead of filing a single lawsuit including the several alleged a class representatives against that single defendant victim." FAC ¶¶ 8(E)-(F).

Defendants committed several predicate acts, including wire fraud, obstruction of justice, witness tampering, and extortion. As to the New Jersey RICO violation, Plaintiffs assert that Defendants committed several other predicate acts, including theft by extortion, theft by deception, and deceptive business practices.

The current motions followed. Plaintiffs also later submitted a letter asking the Court to consider the case of *Main St. at Woolwich, LLC v. Ammons Supermarket, Inc.*, 451 N.J. Super. 135 (App. Div. 2017). Defendants Jones, Wolf, and Jones, Wolf & Kapasi LLC submitted a letter refuting the relevance of *Main St. at Woolwich, LLC* and asking the Court to consider *Grubb v. Green Tree Servicing, LLC*, No. Civ. No. 13-07421 (D.N.J. July 24, 2014).

## II.    LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss the Court may also consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation & emphasis omitted)). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.   LEGAL ANALYSIS

As noted, Plaintiffs allege that Defendants violated the federal RICO statute, 18 U.S.C. § 1961 *et seq.*, and the New Jersey RICO statute, N.J.S.A. 2C:41-1 *et seq.* FAC ¶ 5.[5] Additionally, Plaintiffs assert that Defendants committed fraud, negligence, and legal malpractice through their participation in the RICO scheme. Thus, the Court has federal question jurisdiction over the federal RICO claim and supplemental jurisdiction over the New Jersey RICO, fraud, negligence, and legal malpractice claims.[6]

---

[5] At the outset, the Court notes that Defendants Mann and the Law Offices of Laura S. Mann as well as Defendants Marcus, Zelman, and Marcus & Zelman LLC argue that Plaintiffs lack standing to assert the relevant RICO claims because they were not involved in the Chapa Case. Mann MTD at 5; Marcus MTD at 45. The Court, however, does not reach the standing arguments because it dismisses the FAC on the other grounds.

[6] Plaintiffs' New Jersey RICO, fraud, negligence, and legal malpractice claims are brought pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367. These claims are

Plaintiffs claim that Defendants' RICO liability stems from their filing of class actions pursuant to the FDCPA. In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." *Kaymark v. Bank of Am., N.A.,* 783 F.3d 168, 174 (3d Cir. 2015), *cert. denied sub nom. Udren Law Offices, P.C. v. Kaymark,* 136 S. Ct. 794 (2016) (quoting 15 U.S.C. §1962(e)). Pursuant to the FDCPA, a successful plaintiff is entitled to actual damages, costs, attorney's fees, and statutory damages. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 578, 584 (2010). The *Jerman* Court noted that the FDCPA is one of several federal laws "that Congress has enacted to protect consumers" and that:

> [a] collateral effect of these statutes may be to create incentives to file lawsuits even *where no actual harm has occurred.* This happens when the plaintiff can recover *statutory damages* for the violation and his or her attorney will receive fees if the suit is successful, *no matter how slight the injury.* A favorable verdict after trial is not necessarily the goal; often the plaintiff will be just as happy with a settlement, as will his or her attorney (who will receive fees regardless). The defendant, meanwhile, may conclude *a quick settlement is preferable* to the costs of discovery and a protracted trial. And if the suit attains class-action status, the financial stakes rise in magnitude.

*Id.* at 616 (emphases added).

Courts have observed that in FDCPA cases, class action litigation is preferable because "in light of the limited quantum of damages available on any class member's claim, individualized prosecution by the class members would be inefficient and is therefore unlikely." *Stair ex rel. Smith v. Thomas & Cook,* 254 F.R.D. 191, 201 (D.N.J. 2008) (citation omitted); *Little-King v. Hayt Hayt & Landau,* 2013 WL 4874349 *7 (D.N.J. Sept. 10, 2013) (noting that

---

sufficiently related to the federal law claims set forth in Plaintiffs' Amended Complaint that they form part of the same case or controversy. *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 308 (3d Cir. 2003), *as amended* (Nov. 14, 2003).

"the expense of individual actions in this FDCPA action, weighed against the potential recovery, would likely be inefficient and cost prohibitive").

**Factual Allegations of the FAC**

The Court finds that the FAC fails to plead plausible factual allegations against Defendants. The FAC is riddled with factually unsupported accusations and wholly conclusory language. Besides inflammatory language and conclusory allegations (most notably "sham" litigation), Plaintiffs offer by way of "proof" little more than print-outs from PACER reflecting cases that Defendants worked on. FAC, Ex. B & C. Plaintiffs claim that the following actions show a fraud of epic proportions: (1) filing a large number of cases, (2) settling a "majority" of those cases "relatively quickly"; (3) acting as co-counsel in several cases; (4) Jones and Mann conducting a legal seminar on the FDCPA; and (5) in two cases, *Abramov* and *Franco*, Defendants using the same general format of pleadings and the same general theory of the case. FAC ¶¶ 8(A)-(B), 9. None of these facts, individually or collectively, reflect any improper conduct nor can any reasonable inference of wrongdoing be drawn therefrom.

Indeed, as noted above, many federal courts have observed that FDCPA cases generally involve nominal damages for any individual plaintiff and also settle quickly to avoid the expense of litigation. Litigators file lawsuits, but Plaintiffs argue that if the lawyers file a "large" number of cases (whatever subjective, ambiguous number that may be), there is evidence of wrongdoing. The allegation is absurd on its face, as are claims that attorneys working together, conducting seminars together, or settling cases quickly reflects some type of impropriety. Plaintiffs suggest that when two firms use the same form of pleading, they are engaged in wrongdoing. The suggestion is preposterous. Frankly, the Court is unaware of any litigator who does not use a

prior pleading (whether her own or another's) at least as a model when drafting a new complaint. Suffice it to say, Plaintiffs present *no* legal authority for the negative inferences they wish to draw from these otherwise benign facts. If Plaintiffs believe that Defendants are conducting some nefarious scheme, then Plaintiffs will have to conduct much more due diligence to plausibly plead their claims rather than relying on PACER print-outs, a legal seminar, and other anecdotal information – all of which is benign on the surface (if not common practice).

Plaintiffs do point out that Marcus & Zelman LLC used the same plaintiff, Truglio, in five suits over a relatively short period of time. FAC ¶ 8(B), Ex. C. Jones, Wolf & Kapasi LLC, according to Plaintiffs, also represented Truglio as a client in one suit. *Id.* This allegation is as close as Plaintiffs come to plausibly pleading suspect activity. However, standing alone, it is not enough to raise the allegations from possible to plausible. In short, Plaintiffs have made no plausible allegation that Truglio was not a proper plaintiff in any of the six suits. As Defendants note, three of the cases involving Truglio were FDCPA cases, of which two settled and one was certified as a class. Marcus MTD at 31-34.

In addition, Plaintiffs repeatedly allege that Defendants brought cases in which there was an "almost universal absence of actual damages." *Id.* ¶ 8(C). At the outset, apart from conclusory claims that there were no actual damages, Plaintiffs fail to plausibly plead (*i.e.*, set forth actual factual allegations supporting their position) that Defendants' clients did not suffer actual damages. Putting aside this pleading deficiency, Plaintiffs rely on *Spokeo, Inc. v. Robins*, 136 S.Ct 1540 (2016) for the proposition that a FDCPA plaintiff must have suffered actual damages. FAC ¶ 9.

The Court finds Plaintiffs' *Spokeo* argument to be unpersuasive for a number of reasons. To begin, *Spokeo* was not decided until 2016, while most of the alleged conduct occurred well prior to the *Spokeo* decision. Moreover, the *Spokeo* Court did not find that a plaintiff must incur actual damages to bring a claim. In *Spokeo*, the Court addressed whether a plaintiff had sufficiently alleged an injury-in-fact[7] to have standing under the Federal Credit Reporting Act of 1970 ("FCRA"). *Spokeo, Inc.*, 136 S.Ct at 1544. The district court had ruled that the *Spokeo* plaintiff did not have standing under the FCRA. The Ninth Circuit reversed, finding that the plaintiff had standing because he had suffered a statutory violation of *his* rights and because he had an individualized, rather than collective, interest in the handling of his credit information. *Id.* at 1546. The United States Supreme Court remanded the case to the Circuit, finding that, in assessing the plaintiff's injury-in-fact, the Circuit had only analyzed whether the alleged injury was particularized but had failed to also analyze whether the injury was concrete. *Id.* at 1548. Thus, the Court in *Spokeo* analyzed standing under the FCRA, not FDCPA. *Id.* Moreover, even in addressing standing under the FCRA, the *Spokeo* Court did not find that actual damages are prerequisite in all cases for a plaintiff to have standing.

Further, the FDCPA expressly permits statutory damages. *Jerman*, 559 U.S. at 578. And courts addressing damages under the FDCPA after *Spokeo* have found that statutory damages are sufficient for standing under the FDCPA. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017) (finding that "although it is possible to read the Supreme Court's decision in *Spokeo* as creating a requirement that a plaintiff show a statutory violation

---

[7] The plaintiff in *Spokeo* brought a class action against Spokeo, Inc., a consumer reporting agency, after learning that the agency's "people search engine" had generated inaccurate information about the plaintiff. *Spokeo, Inc.*, 136 S.Ct at 1545.

has caused a 'material risk of harm' before he can bring suit, we do not believe that the Court so intended to change the traditional standard for the establishment of standing") (internal footnote and citation omitted); *Hartman v. Medicredit, Inc.*, 2016 WL 7669858, at *3 (W.D. Pa. Dec. 20, 2016*), report and recommendation adopted,* 2017 WL 90383 (W.D. Pa. Jan. 10, 2017) (ruling that the plaintiff had standing because a violation of substantive FDCPA right was a concrete and particularized injury, as required under *Spokeo*); *Daubert v. Nra Grp., LLC*, 2016 WL 4245560, at *4 (M.D. Pa. Aug. 11, 2016) (indicating that plaintiff's allegation of a FDCPA violation presented a concrete and particularized injury following *Spokeo*). Thus, Plaintiffs' allegation that Defendants brought numerous FDCPA lawsuits lacking actual damages, one of the pillars of Plaintiffs RICO liability theory, crumbles from lack of factual and legal support.

Plaintiffs' further claim that their "actionable" matter, the Chapa Case, is illustrative of Defendants' RICO enterprise. FAC ¶ 17. However, in the Chapa Case, Plaintiffs (who were the defendants) *settled* quickly.[8] Plaintiffs did not move to dismiss the complaint nor did they seek Rule 11 sanctions. Instead, Plaintiffs settled the case for $12,000, payable in monthly payments. After filing this lawsuit, Plaintiffs stopped making the monthly settlement payments.[9] However,

---

[8] In the FAC, Plaintiffs state that they settled the Chapa Case before filing counterclaims or completing discovery. FAC ¶ 1. The FAC's wording suggests that the case settled with insufficient time for discovery. However, the docket entries for the Chapa Case show that Plaintiffs, who were the *Chapa* defendants, were the party who delayed discovery. Not only did the *Chapa* plaintiffs move to compel discovery but Judge Mannion also ordered *Chapa* defendants to show cause why monetary and reprimand sanctions should not issue for their failure to respond to discovery requests and failure to comply with the Court's discovery orders. *Chapa v. Turner, Esq., et al*, Civil Action No. 15-3125, Motion to Compel by Juliette Chapa (D.E. 16) & Order to Show Cause (D.E. 22).

[9] The Court is unaware of a legal basis that allows Plaintiffs to properly stop making payments under the terms of a voluntary settlement agreement. The action appears to be a transparent attempt to bolster Plaintiffs' current case.

that cessation does not support Plaintiffs' theory that the Chapa Case is illustrative of Defendants' RICO enterprise.

Plaintiffs also rely heavily on *Gallego v. Northland Grp., Inc.,* 102 F. Supp. 3d 506 (S.D.N.Y. 2015), *aff'd in part, vacated in part, remanded,* 814 F.3d 123 (2d Cir. 2016), for support. FAC ¶ 40(D). Jones, Wolf, and Jones, Wolf & Kapasi were counsel for plaintiffs in this matter. *Gallego,* 102 F. Supp. 3d at 508. In *Gallego,* the parties filed a joint motion to certify a class in anticipation of a settlement. The district court denied the motion pursuant to her discretion. *Id.* at 510-11. However, the district court did not find fraud or sham litigation. Moreover, on appeal, the Second Circuit also did not discuss, much less find, fraud or sham litigation. Instead, the Circuit found that even though both of the plaintiff's FDCPA theories lacked merit, they were not so obviously frivolous as to fail to raise a colorable federal question. *Gallego v. Northland Grp. Inc.,* 814 F.3d 123, 128–30 (2d Cir. 2016). As to Jones Defendants' role in bringing the case, the Circuit stated that "innovative lawyers should not be deterred from advancing legal theories that neither we nor the Supreme Court have authoritatively rejected by the risk of having their claims branded 'frivolous' simply on the basis of non-binding adverse authority." *Id.* Thus, *Gallego* is not illustrative of, nor does it support, Plaintiffs' claims of Defendants' sham litigation RICO scheme.

The FAC only contains misleading interpretations of the cases it cites as well as factual allegations that are not plausibly pled. As a consequence, the FAC must be dismissed. However, the Court will also address the deficiencies in the legal theories underlying the counts in the FAC.

**Legal Theories of the FAC**

## A. Federal and New Jersey RICO Law

Turning to Plaintiffs' RICO claims, Plaintiffs allege violations of the federal and state RICO statutes in Counts One through Four. In Count One, Plaintiffs allege a substantive violation of the federal RICO statute, 18 U.S.C. § 1962, while Count Two cites a RICO conspiracy. FAC ¶¶ 10-18. Section 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d), in turn, makes it illegal to conspire to violate section 1962(c). To plead a plausible claim under section 1962 a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d at 362 (quoting *Lum v. Bank of Am.,* 361 F.3d 217, 223 (3d Cir. 2004) (citation omitted)).

In Counts Three and Four, Plaintiffs allege violations of New Jersey's RICO statute, N.J.S.A. 2C:41-2(c). Like its federal counterpart, the New Jersey RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *State v. Ball,* 141 N.J. 142, 155 (1995). N.J.S.A. 2C:41-2(d) makes it illegal to conspire to violate section 2C:41-2(c). *Id.* Thus, both the federal and New Jersey RICO statutes require a plaintiff to show that defendants were part of (1) an enterprise and (2) through that enterprise engaged in a pattern of racketeering activity.

Before analyzing the substantive counts, the Court will first review two doctrines, the *Noerr-Pennington* doctrine and the New Jersey Litigation Privilege. Both doctrines potentially preclude the present matter without necessitating a substantive legal review of the claims. The doctrines are potentially applicable because Plaintiffs base their allegations on Defendants' filing of lawsuits.

*1. The Noerr-Pennington Doctrine*

The *Noerr-Pennington* doctrine protects the First Amendment right to petition the Government for a redress of grievances. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). Pursuant to the doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 2013 WL 2444036, at *5 (D.N.J. June 4, 2013). The protected rights include "litigation: 'the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.'" *Id.* (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972)).

The *Noerr-Pennington* doctrine has one exception, for sham litigation. To find sham litigation, the United States Supreme Court requires a two-prong test to be met:

> [f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; second, the litigant's subjective motivation must conceal[ ] an attempt to interfere *directly* with the business relationships of a competitor ... through the use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.

*Giles*, 2013 WL 2444036, at *6 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60-61 (1993)) (internal quotations omitted).

Here, as discussed, Plaintiffs' claims spring from lawsuits that Defendants filed with the courts. Thus, Defendants' actions fall within the *Noerr-Pennington* doctrine's protections, unless the sham litigation exception applies. It does not. While Plaintiffs use conclusory language to accuse Defendants of bringing sham lawsuits, they do not provide plausible factual support for this assertion. As discussed above, Plaintiffs' factual allegations are woefully deficient.

## 2. *The New Jersey Litigation Privilege*

Although the Court finds independent bases (discussed below) to dismiss the state claims, the New Jersey Litigation Privilege ("NJLP") also appears to act as a bar. The NJLP "shields 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 585 (2006) (quoting *Hawkins v. Harris,* 141 N.J. 207, 216 (1995)). New Jersey courts have long recognized that the NJLP provides immunity for defamation actions. *Fenning v. S. G. Holding Corp.,* 47 N.J. Super. 110, 117 (App. Div. 1957) (holding that the NJLP "is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice"). Since that time New Jersey courts have liberally extended the NJLP to protect "attorneys not only from defamation actions, but also from a host of other tort-related claims." *Loigman*, 185 N.J. at 583. In fact, as the New Jersey Supreme noted, state litigation privileges have been applied to a "spectrum of legal

15

theories," including "negligence, breach of confidentiality, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, [and] fraud." *Id.* (quoting T. Leigh Anenson, ABSOLUTE IMMUNITY FROM CIVIL LIABILITY: LESSONS FOR LITIGATION LAWYERS, 31 PEPP. L.REV. 915, 927-28 (2004)).

While the NJLP is extensive, it is not absolute. Under the NJLP, a litigant remains liable for malicious prosecution as well as for professional discipline resulting from unethical conduct. *Dello Russo v. Nagel*, 358 N.J. Super. 254, 266 (App. Div. 2003). Further, while the NJLP shields some abuse of process cases, it does not shield all such cases. *Id.* Thus, remedies exist for a plaintiff to allege actionable abuse of the judicial system. However, here, Plaintiffs did not attempt to use these remedies. Further, in response to Defendants asserting NJLP immunity, Plaintiffs essentially only argue that they did not allege defamation against Defendants. Pl. Opp. at 19. Plaintiffs' response, therefore, ignores that the New Jersey courts have extended the NJLP to a variety of tort claims beyond defamation. In sum, Defendants have made an appealing argument that the FAC's counts based on New Jersey law are barred by the NJLP. Plaintiffs' response fails to adequately respond to these arguments.

### 3. RICO Predicate Acts

Defendants make numerous arguments concerning the FAC's failure to plausibly plead both a "person" and "enterprise" as required by RICO. The Court, however, does not reach those contentions because the alleged predicate acts are deficient. The RICO element of a pattern of racketeering activity "requires at least two acts of racketeering activity within a ten year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363. The required acts are also called predicate

acts. Here, Plaintiffs allege that Defendants committed the following federal predicate acts: wire fraud, obstruction of justice, witness tampering, and extortion. As to the New Jersey RICO statute, Plaintiffs allege the following predicate acts: theft by extortion, theft by deception, and deceptive business practices. Plaintiffs' theories on Defendants committing each of these predicate acts are untenable.

As to wire fraud, 18 U.S.C. § 1343, Plaintiffs allege that "[t]he wirings consist of the filings in Federal Court via the internet, *i.e.* through the ECF system, which are interstate wirings in furtherance of and assistance to the execution of the fraudulent scheme." FAC ¶ 24. To support this allegation Plaintiffs point to attached PACER filings, which they claim illustrate that Defendants "filed numerous documents in Federal District Court(s) in implementing the RICO scheme." *Id.*

An offense of "wire fraud has two essential elements: '(1) a scheme to defraud, and (2) a . . . wire in furtherance of that scheme.'" *Kaul v. Christie*, 2017 WL 2953680, at *29 (D.N.J. June 30, 2017) (quoting *Annulli v. Panikkar*, 200 F.3d 189, 200 n.9 (3d Cir. 1999)). To plausibly allege wire fraud, or any other type of fraud, a plaintiff must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) states, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, in a fraud claim, Rule 9(b)'s heightened pleading standard "requires a plaintiff to plead the 'who, what, when, where, and how' of the conduct giving rise to the claim." *Kowalsky v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 5770523, at *8 (D.N.J. Sept. 30, 2015). "The purpose of Rule 9(b) is 'to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them

against spurious allegations of immoral and fraudulent behavior.'" *Kowalsky*, 2015 WL 5770523, at *8 (quoting *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2000)). "Plaintiff need not always identify the particular time and place of the misrepresentation, however, so long as the complaint contains some 'alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud.'" *Peters v. Countrywide Home Loans, Inc.*, 2016 WL 2869059, at *3 (D.N.J. May 17, 2016) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert*. denied, 469 U.S. 1211 (1985)).

Here, Plaintiffs have done little more than point the Court to PACER filings and assert in a conclusory fashion that these filings evidence fraud. Plaintiffs have failed to analyze *any* of Defendants' filings to plausibly plead which were allegedly fraudulent and why they were so. Yet, even if Plaintiffs were able to plausibly set forth factual allegations, the underlying theory of wire fraud would not find legal support.

Numerous courts have rejected the theory that the filing of complaints, along with other litigation activity, can be the basis of wire or mail fraud. *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq.,* 443 F. App'x 582 (2d Cir. 2011); *see Meade v. Guar. Bank,* No. 1:12-CV-1559, 2013 WL 5438750, at *10 (M.D. Pa. Sept. 27, 2013) (holding "that the filing of court documents alone does not constitute mail fraud for reasons of public policy"); *D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y. 1995) (agreeing with defendants that litigation documents "cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation"); *Spiegel v.*

*Cont'l Illinois Nat. Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985), *aff'd,* 790 F.2d 638 (7th Cir.

1986) (holding that "Congress could not have intended that the mail fraud statute sweep up

correspondence between attorneys, dealing at arm's length on behalf of their parties, concerning

an issue in pending litigation"). The courts have applied this prohibition to litigation that was

either frivolous or without merit. Courts have expressly found that, as a matter of law, litigation

activities cannot be the basis of a wire fraud claim under the RICO statute. *Kashelkar v. Rubin &*

*Rothman*, 97 F. Supp. 2d 383, 392–93 (S.D.N.Y. 2000), *aff'd sub nom. Kashelkar v. Ruben &*

*Rothman*, 1 F. App'x 7 (2d Cir. 2001) (finding that the complaint "constituted nothing more than

the legitimate conduct of attorneys representing their clients in pending litigation" and that this

"Court has soundly rejected the contention that such conduct by attorneys can constitute mail or

wire fraud"). Instead, courts have found that when faced with a court filing that is believed to be

frivolous or without merit, a party has remedies in the form of an action malicious prosecution or

abuse of process. *Curtis & Assocs., P.C.,* 758 F. Supp. 2d at 171 (citations omitted). Of course,

Rule 11 sanctions are also available.

The district court in *Curtis*, also found that *United States v. Eisen*, 974 F.2d 246 (2d

Cir.1992), was inapposite. Here, too, *Eisen* does not provide Plaintiffs relief. As the *Curtis* court

noted, the Second Circuit in *Eisen* never addressed whether litigation activities alone can

constitute RICO predicate acts of mail and wire fraud. *Id.* Further, the court in *Curtis*

highlighted that the facts in *Eisen* reflected attorneys going far beyond their role as legal

representatives in perpetuating their fraud scheme. *Id.* Specifically, in *Eisen*, the Second Circuit

noted that the:

> evidence at trial established that the defendants conducted the
> affairs of the Eisen law firm through a pattern of mail fraud and
> witness bribery by pursuing counterfeit claims and using false

> witnesses in personal injury trials, and . . . [that] [t]he methods by
> which the frauds were accomplished included pressuring accident
> witnesses to testify falsely, paying individuals to testify falsely that
> they had witnessed accidents, paying unfavorable witnesses not to
> testify, and creating false photographs, documents, and physical
> evidence of accidents for use before and during trial.

974 F.2d 246, 251 (2d Cir. 1992).

Just as the facts in *Eisen* differed significantly from the facts in *Curtis*, they are also in no way analogous to the facts in this matter. Plaintiffs, here, have not plausibly alleged any facts that Defendants paid witnesses to testify falsely, paid unfavorable witnesses to not testify, or created false evidence for use their cases.

Plaintiffs further allege that Defendants obstructed justice in violation of 18 U.S.C. § 1503 as a predicate act. The FAC sets forth one paragraph to support this claim. FAC ¶ 27. In the first sentence, Plaintiffs state that Defendants obstructed justice "by virtue of using corrupt plaintiffs to file lawsuits in Federal Court primarily for the purpose of securing settlements inuring primarily for the benefit of Defendants." *Id.* In the second sentence, Plaintiffs recite the elements of an obstruction of justice claim and perfunctorily state that Defendants' actions fit these elements. These two sentences are merely conclusory and wholly insufficient to plead a plausible obstruction of justice claim.

Just as cursorily, Plaintiffs then assert that Defendants committed the additional predicate act of witness tampering in violation of 18 U.S.C. § 1512(b)(1) and (b)(2). The FAC provides one sentence to support their claim. FAC ¶ 28. Plaintiffs assert that Defendants committed witness tampering "by corruptly persuading professional plaintiffs with intent to influence their testimony in an official proceeding and without testimony in an official proceeding." FAC ¶ 28.

The witness tampering claim is again completely conclusory and devoid of the necessary plausible factual allegations.

Finally, Plaintiffs allege that Defendants committed the predicate act of extortion in violation of 18 U.S.C. § 1951. Specifically, Plaintiffs claim "that each Defendant obtained and sought to obtain property from Plaintiffs, i.e. settlements of lawsuits, and conspired to do so, with Plaintiffs' consent, induced by the wrongful use of fear of economic harm if such cases were not settled." FAC ¶ 29. Here, once again, Plaintiffs offer the Court a single conclusory sentence to plead liability. Again, the pleading is not plausible. Moreover, several circuits have found that even meritless litigation does not constitute extortion under Section 1951. *See Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (finding that "extortion is the *antithesis of litigation* as a means of resolving disputes . . . recognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim  (emphasis added)); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (holding that Defendants' "threat to file litigation against Marion County, even if made in bad faith and supported by false affidavits" is not extortion as a matter of law).  Thus, Plaintiffs have not pled a plausible claim of extortion and have not provided any authority demonstrating that it is a viable legal theory even if plausibly pled..

Turning to the predicate acts under New Jersey RICO statute, Plaintiffs allege three predicate acts in one paragraph, listing each in bullet point format. FAC ¶ 35. Plaintiffs first allege that Defendants committed theft by extortion in violation of N.J.S.A. 2C:20-5. Plaintiffs support this allegation in one sentence. Stating that "Defendant attorneys purposefully and unlawfully seek to extort statutory and class action attorney's fees by filing bogus and sham class

actions subjecting victims to impairment of their credit or business reputation or imposing costs of litigation exceeding the extortion amount." FAC ¶ 35. This conclusory allegation is not plausibly pled.

Moreover, N.J.S.A. § 2C:20-5 provides that "[a] person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion." Under the statute there are seven provisions (a-g) that list ways a person may commit extortion. Plaintiffs, however, do not specify which provision(s) they believe Defendants are liable under. Further, no provision appears to apply to Defendants' alleged misconduct. The Court, therefore, is at a loss as to how Plaintiffs' believe the facts of this case fit within the theft by extortion statute. It will not speculate. Plaintiffs have not provided sufficient facts to plausibly plead theft by extortion and the legal theory is suspect at best.

Plaintiffs next claim that Defendants committed the predicate act of theft by deception in violation of N.J.S.A. 2C:20-4. To support this allegation, Plaintiffs assert that "Defendant attorneys purposefully and unlawfully represented to the Court and Counsel that they are pursuing putative class actions in good faith when in fact the basic and sole motivation was prospective class action attorney's fees." FAC ¶ 35. Pursuant to N.J.S.A. 2C:20-4 "[a] person is guilty of theft if he purposely obtains property of another by deception." *State v. Diorio*, 216 N.J. 598, 616 (2014). Under the statute, a person may deceive another in three ways, although the FAC fails to indicate which theory it is asserting. Again, the Court will not speculate. Suffice it say, the conclusory allegations are not plausibly pled. The Court further notes that to the extent Plaintiffs are asserting a theory that requires reliance, the FAC appears to allege the

opposite – Plaintiffs in no way relied on the complaint in the Chapa Case when they decided to settle.

Finally, Plaintiffs allege that Defendants committed the predicate act of deceptive business practices in violation of N.J.S.A. 2C:21-7(b) and (e). The FAC fails once again to plausibly plead facts to support this predicate act. FAC ¶ 35. A person is liable under N.J.S.A. 2C:21-7(b) if in the course of business he or she "[s]ells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service." Further, a person is liable under N.J.S.A. 2C:21-7(e) if in the course of business he or she "makes a false or misleading statement in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the purchase or sale of property or services." These statutory provisions do not relate to the Plaintiffs' allegations. Plaintiffs do not accuse Defendants of selling any commodities. Plaintiffs are not clients of Defendants who could argue that received improper legal services. Similarly, the FAC utterly fails to tie any of Defendants' advertisements to any alleged impropriety. Thus, the FAC fails to plausibly allege deceptive business practices.

For the foregoing reasons, the alleged predicate acts in both the federal and state RICO claims are deficient. Thus, given that the substantive RICO counts in the FAC are dismissed, the conspiracy counts must be as well. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient"). Therefore, the Court also dismisses Counts II and IV.

   *4. Fraud*

In addition to their RICO claims, Plaintiffs in Count Five allege that Defendants committed fraud when they filed their class action lawsuits with the courts. FAC ¶¶ 39-41. As discussed above, the Court finds that the New Jersey Litigation Privilege immunize Defendants from liability for fraud, as well as negligence and legal malpractice discussed below, because Plaintiffs' allegation stems from Defendants' filings with the courts. Plaintiffs have also not met the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to assert a fraud claim. The common law elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 166 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Plaintiffs have failed to argue with particularity what specific misrepresentations Defendants made that Plaintiffs relied upon to their detriment. To the contrary, Plaintiffs appear to claim that they did not rely on anything posited by Defendants. The FAC does not plausibly plead fraud.

   5. *Negligence*

   In Count Six Plaintiffs claim the Defendants' actions in bringing the class action lawsuits constituted negligence. Plaintiffs state that Defendants "implementation of the RICO Plan constituted negligence which damaged the class of plaintiff victims economically, personally, physically, and psychologically." FAC ¶¶ 42-43. A plaintiff asserting a claim of negligence has the burden of proving that three essential elements exist: "(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately

caused by defendant's breach." *Endre v. Arnold*, 300 N.J. Super. 136, 142 (App. Div. 1997)

(citation omitted). Whether a duty of care exists is a question of law for the court to decide. *Id.*

Besides not plausibly pleading facts to support negligence, Plaintiffs completely fail to allege

what duty of care was owed to them by Defendants. The negligence count is dismissed.

### 6. Legal Malpractice

In the FAC's final Count, Count Seven, Plaintiffs allege that Defendants committed legal

malpractice. FAC ¶¶ 44-45. Legal malpractice is negligence relating to an attorney's

representation of a client. *Sommers v. McKinney*, 287 N.J. Super. 1, 9–10 (App. Div. 1996). It is

the client's, or plaintiff's, burden to prove "1) the existence of an attorney-client relationship

creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the

breach was the proximate cause of any damages sustained; and 4) that actual damages were

incurred." *Id.* Here too, Plaintiffs must show that Defendants owed them a duty of care, either

as a client or, in special circumstances, as a third party. *See Banco Popular N. Am. v. Gandi*, 184

N.J. 161, 181 (2005) (finding that "the invitation to rely and reliance are the linchpins of attorney

liability to third parties"). Plaintiffs have failed to allege facts to plausibly suggest that

Defendants owe them a duty of care either as a client or as third party. Therefore, the FAC does

not plausibly plead legal malpractice.

## IV.    CONCLUSION

Therefore, for the reasons discussed above, the Court **GRANTS** Defendants' motions to

dismiss, D.E. 39, 49, 50. Defendants encourage the Court to dismiss the matter with prejudice

and have also made two motions for sanctions pursuant to Rule 11 based on Plaintiffs' filing of

the FAC. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990) (Federal Rule of Civil

Procedure 15 invokes a liberal approach to amendment and states that "leave shall be freely given when justice so requires" unless other factors weigh against such relief). The Court will rule on the pending Rule 11 motions separately. In light of the numerous factual and legal deficiencies, the Court has real concerns that any attempted amendment of the FAC would be futile. However, since this is the first motion to dismiss that the Court has ruled on, and it is the Court's general practice to give a party at least one opportunity to cure any pleading deficiencies, the Court will permit Plaintiffs an opportunity to file a Second Amended Complaint. If Plaintiffs do so, and Defendants do not believe that Plaintiffs have adequately addressed the numerous deficiencies in the FAC, Defendants can also file another motion for Rule 11 sanctions. Therefore, Plaintiffs have thirty (30) days to file a Second Amended Complaint, if they so choose, which addresses the deficiencies set forth herein. If Plaintiffs do not do so, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: January 8, 2018

John Michael Vazquez, U.S.D.J.